Brian DIXON

v.

SHAMROCK FINANCIAL CORP.

Civil Action No. 06–11828–RGS.

United States District Court,
D. Massachusetts.

April 20, 2007.

Christopher M. Lefebvre, Pawtucket, RI, for Plaintiff.

Jeffrey R. Martin, Burns & Levinson LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

STEARNS, District Judge.

This case involves one of those annoyances of the modern consumer culture—the seemingly endless stream of mail from hawkers of credit. For the most part, there is little that a recipient can do, unless, as plaintiff Brian Dixon alleges, the mailer—in this case, the defendant Shamrock Financial Corporation (Shamrock)—violates the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681–1681x. The FCRA forbids a lender from making unauthorized use of information gleaned from a consumer credit report to solicit a loan. Dixon seeks certification of a class of consumers in Massachusetts, Rhode Island, New Hampshire, and Maine who received written loan solicitations from Shamrock.

Shamrock, in moving to dismiss the Complaint, argues that the FCRA permits lenders to make loan offers (like the one extended to Dixon) that are conditioned on a determination of the potential borrower's creditworthiness, so long as the offer is "firm." Dixon, relying on a Seventh Circuit case, *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir.2004), maintains that for an offer of credit to be "firm," it must have some discernible value to the consumer. Dixon asserts that Shamrock's mailing was nothing more than a naked advertisement.

### BACKGROUND

Dixon, a resident of Pawtucket, Rhode Island, received a form letter from "Kathy Kelly" at Shamrock offering a "free consultation." Kelly told Dixon that "[i]n just a few minutes, I can show you how you may restructure your debt, maximize tax benefits, improve your credit score and most importantly, *save lots of money every month.*" (Emphasis in original).[1] Kelly then explained that Shamrock "can pay off your revolving debt and refinance your mortgage balance at a lower rate. *Your credit score could then increase 100 points or more.*" (Emphasis in original). The letter concluded with the following disclaimers in small print.

*TERMS & CONDITIONS:* This offer is made by Shamrock Financial Corporation who [sic] is not affiliated with your current lender nor is it an agency of the government. This is not a commitment to make a loan. All approvals are subject to underwriting guidelines. Minimum and maximum loan amount apply. Rates and programs subject to change at any time . . . .

*PRE–SCREEN & OPT–OUT NOTICE:* This "prescreened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria (including providing acceptable property collateral). If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll-free . . . .

Dixon states in the Complaint that he never authorized Shamrock to access his credit reports, nor did he ever initiate contact with Shamrock with regard to any type of credit transaction. Dixon does not claim to have been refused credit or to have suffered any actual damages. Rather, he alleges that as a "willful" violator of the FCRA, Shamrock is liable for statuto-

---

1. The date of the mailing is not specified in the Complaint, but is said to have been within two years of the filing of the lawsuit.

ry damages. Dixon also seeks class certification, designation of himself as the class representative, injunctive relief, and attorneys' fees and costs.

## DISCUSSION

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint. A court should grant the motion "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In evaluating a complaint, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Redondo–Borges v. U.S. Dep't. of Hous. and Urban Dev.*, 421 F.3d 1, 5 (1st Cir.2005).

■■■ The FCRA is intended to maintain the privacy of consumer information gathered by consumer credit reporting agencies. 15 U.S.C. § 1681a(4). The FCRA prohibits these agencies from furnishing consumer reports to third parties except for certain statutorily-defined "permissible purposes." One such purpose is to negotiate the extension of credit.

> Any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> . . .
>
> (3) to a person which it has reason to believe—
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and in-

volving the extension of credit to, or review or collection of an account of, the consumer, . . .

15 U.S.C. § 1681b(a)(3)(A). If the credit transaction is initiated by the lender rather than by the consumer, the "permissible purpose" is limited to the extension of "a firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i).

> The term "firm offer of credit or insurance" means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following:
>
> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established—
>
> (A) before selection of the consumer for the offer; and
>
> (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> (2) Verification
>
> (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer . . .; or
>
> (B) of the information in the consumer's application for the credit or insurance. . . .
>
> (3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance. . . .

15 U.S.C. § 1681a(*l*).[2] *See also Kennedy*

---

**2.** The FCRA also specifically requires any entity that makes use of a consumer report in mailing a "cold call" credit invitation to include in the written solicitation a "clear and conspicuous statement" that: (1) consumer credit reports were used in connection with

the transaction; (2) the consumer was selected to receive the offer of credit because she satisfied the criteria for creditworthiness used by the offeror; (3) if the consumer does not continue to meet the criteria for a finding of

*v. Chase Manhattan Bank USA, NA,* 369 F.3d 833, 841 (5th Cir.2004) (holding that "a firm offer of credit under the Act 'really means a firm offer if you meet certain criteria.' ").

> [T]o separate the use of credit data to sell products (forbidden) from the use of credit data to make firm offers of credit (allowed), a court must determine whether the offer has value as an extension of credit alone. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. To decide whether [the lender] has adhered to the statute, a court need only determine whether the four corners of the offer satisfy the statutory definition ... and whether the terms are honored when consumers accept.

*Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 955 (7th Cir.2006), citing *Cole,* 389 F.3d at 726–727.

A number of district courts have found a "firm offer" where a mailing contains only the thinnest of assurances that an extension of credit is actually being contemplated. In *Murray v. HSBC Auto Fin., Inc.,* 2006 WL 2861954 (N.D.Ill. Sept.27, 2006), the court found on cross-motions for summary judgment that a mailer's statement that the recipient had been preselected for an auto refinance loan in a minimum

amount of $5,000 constituted a "firm" offer of credit. In *Bonner v. CorTrust Bank, N.A.,* 2006 WL 1980183 (N.D.Ind. July 12, 2006), on a motion for judgment on the pleadings, a credit card offer was held to be "firm" where the consumer was promised an initial line of credit of $250, and the mailer explained the interest rate, the repayment terms, and disclosed origination fees that reduced the actual credit line to a miserly $75. In *Putkowski v. Irwin Home Equity Corp.,* 423 F.Supp.2d 1053 (N.D.Cal.2006), the court found on a motion to dismiss that a mailer offering a minimum 20–year, $15,000 line of credit with a maximum interest rate of 24 percent was sufficiently detailed to constitute a firm offer.

In *Poehl v. Countrywide Home Loans, Inc.,* 464 F.Supp.2d 882, 886 (E.D.Mo. 2006), the principal case upon which Shamrock relies, the court dismissed a lawsuit involving a mailer that informed the plaintiff that he had been preselected for a $92,500 mortgage loan conditioned on verification of his credit information and satisfaction of the lender's collateral requirements. The mailer stated that the suggested loan "amount" was based on 75 percent of the balance of Countrywide's average outstanding loan. The mailer did not specify the interest rate or repayment terms of the proffered loan. The court nonetheless found the "offer" sufficiently firm.

> It is not the Court's job to decide whether accepting a particular offer might be

---

creditworthiness or fails to provide the required collateral, then the credit may not be extended; (4) the consumer may decide to not receive any future credit offers by prohibiting the use of information contained in her credit file that is not initiated by her; and (5) the consumer may exercise that right by calling a given toll-free number or by contacting the

credit agency at a stated address. *See* 15 U.S.C. 1681m(d)(1)(A)-(E). Dixon does not allege that Shamrock failed to make the required disclosures. The court notes that in any event Congress has abolished private remedies for violation of the "clear-disclosure requirement" of the FCRA. *See* 15 U.S.C. § 1681m(h)(8).

unwise. Rather, I need only look to whether the offer has some value, or more than nominal value, in order to distinguish it from a sales pitch. Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms. Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements. If Congress had wanted to require that loan amounts, interest rates, or payback times be specified in a "firm offer," it could have done so. So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit."

*Id.* at 886. *See also Nasca v. J.P. Morgan Chase Bank, N.A.* 2007 WL 678407, at \*4 (S.D.N.Y. March 5, 2007) ("Because Congress explicitly required that creditors disclose [only] one specific credit term [the requirement for collateral, if any] in order for ... a solicitation to constitute a 'firm offer of credit,' this Court will not imply that Congress meant to require additional credit terms—such as specific interest rates or amount of credit—in order for a solicitation to constitute a 'firm offer of credit.' "); *Soroka v. J.P. Morgan Chase & Co.*, 2007 WL 895249, at \*3–4 (S.D.N.Y. March 19, 2007) (same).[3]

■ To decide whether a lender has complied with FCRA, "a court need only determine whether the four corners of the offer satisfy the statutory definition ..., and whether the terms are honored when consumers accept." *Murray*, 434 F.3d at 956. When put to the lender-friendly "four corners" test, the letter that Dixon received from Shamrock, while it might lie on the outer rim of the permissible, earns a passing grade.[4] It is true that the promised consultation with "Kathy Kelly" seems nothing more than an invitation to a high-pressure sales pitch. But the letter assured Dixon that he had been "pre-screened" for a loan, in other words, that he was guaranteed to receive one if the information in his consumer report remained accurate.[5] *See Perry v. First Nat'l Bank*, 459 F.3d 816, 825 (7th Cir.2006) (letter passed muster where recipients of a credit card solicitation were told that they had been "preapproved").

■ That being said, it would remain open to Dixon to prove that Shamrock's supposedly "firm" offer of credit was a

---

**3.** In *Soroka,* Judge Batts makes the point that the timing of the disclosure of specific loan terms is governed by the Truth in Lending Act and not the FCRA; hence the failure to include such terms in a firm offer of credit is not an FCRA violation. *Id.* at \*4.

**4.** In the *Cole* line of cases, offers have been held to be infirm where the omission of details regarding the terms of the loans being offered made it impossible for the consumer to determine whether an offer in fact had "value." In circuits other than the Seventh, district courts have declined to tie the concept of value to the disclosure of specific loan details. While there may be much to be said

for the *Cole* test, the weight of authority trends heavily in the opposite direction. This is true even in the Seventh Circuit. *See Murray,* 434 F.3d at 955 (limiting *Cole* to "sham offer[s] used to pitch a product rather than extend credit").

**5.** Shamrock also contends that the letter offered the prospect of a lower-rate loan at least equal to the amount of Dixon's revolving debt and mortgage with a resulting improvement in Dixon's credit score. "These benefits, while not specified in dollars and cents, clearly are enough to constitute an 'offer of credit.' " Defendant's Memorandum, at 15.

"sham," in the sense that it would not have been honored by Shamrock had Dixon accepted its terms, or that it was intended to lure Dixon into something other than a *bone fide* credit transaction (as was the case in *Cole* where the "offer of credit" was in fact a sales pitch for a car dealership). However, no allegation is made in the Complaint that Dixon—or anyone else—had ever responded to Shamrock's solicitation and then been denied credit despite meeting creditworthiness requirements or had been diverted to some other type of business dealing. Without an allegation that Shamrock's offer to extend credit was something other than what it purported to be, the Complaint fails to allege a critical statutory prerequisite of a cause of action under the FCRA.

"To survive a motion to dismiss, a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988) (internal quotation marks omitted). Because Dixon's Complaint fails to allege a material element of a FCRA cause of action, Shamrock's motion to dismiss will be allowed. *See Perry*, 459 F.3d at 825 (the dismissal of a complaint was proper where plaintiff did not allege "that she or any [other putative] class member was denied credit upon responding to the solicitation.").[6]

*ORDER*

 For the foregoing reasons, the motion to dismiss is *ALLOWED* with prejudice.[7] The case will be closed.

SO ORDERED.

---

6. While from a consumer perspective, a different result might be preferable, I agree with the sentiment expressed by Judge Stein in the *Nasca* case: "If Congress believes the statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in the privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute." *Nasca*, 2007 WL 678407, at *4.

7. Because of Dixon's inability to prove as a matter of law that Shamrock had extended a sham offer of credit, the court agrees with Shamrock's counsel that any effort to amend the Complaint would be futile.